IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:18-cv-02470-RM-KLM

GEORGE MONTANO,

      Plaintiff,

v.

RICOH USA, INC.,

      Defendant.

## ORDER

This employment case is before the Court on Defendant's Motion for Summary Judgment (ECF No. 70), which has been fully briefed (ECF Nos. 77, 93). The Court grants the motion for the reasons below.

### I.     LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv*

*ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II.   BACKGROUND

Plaintiff began working for Defendant as a service delivery manager in March 2012 and was promoted to the position of global service delivery manager in December that year. (ECF No. 94 at ¶¶ 2, 3.) He started working on Defendant's account with Intuit in February 2017, and in April 2017, he was promoted to managing the account and overseeing the entire performance of Defendant's contract with this client. (*Id.* at ¶¶ 13, 15, 20.) In this management role, Plaintiff reported to Rob Schwanz. (*Id.* at ¶ 16.) Catherine Clement also worked on the Intuit account, but she was a co-worker and not Plaintiff's supervisor. (*Id.* at ¶¶ 17, 19.) At a February 2018 meeting, Mr. Schwanz informed Plaintiff that Defendant had received negative feedback from Intuit about his performance. (*Id.* at ¶¶ 22, 23.) Later that month, Plaintiff received a jury summons. (*Id.* at ¶ 24.)

Plaintiff admits that he did not want to be selected for a jury and felt that it was "really bad timing" because he was trying to fix the Intuit account. (*Id.* at ¶ 31.) He was selected to serve on the jury for a murder trial that lasted six-and-a-half weeks. (*Id.* at ¶ 29.) Before his selection, Plaintiff told Mr. Schwanz he did not want serve on the jury, and Mr. Schwanz sent Plaintiff a text message stating, "Good luck getting out of it." (*Id.* at ¶¶ 32, 33.) Plaintiff admits

2

that Mr. Schwanz never told him, coached him, or pressured him to try to get out of jury duty. (*Id.* at ¶ 35.)

Plaintiff also discussed his jury summons with Ms. Clement. (*Id.* at ¶ 36.) According to Plaintiff, she told him he could get out of it by "tell[ing] them things that they don't like" and suggested that he "tell them you don't like cops." (*Id.* at ¶ 36.) The day after that discussion, Plaintiff and Ms. Clement exchanged the following text messages:

> Ms. Clement: Please tell me your not on a jury! The MOW meeting went well. We had a full house: Elicia, Rafael, Gerry, Ali and Lance Bell. I wish you would have been there.. Lance Bell said great things about Richo being a good partner and how happy Rafael is!!! Fill u in later!!
>
> Plaintiff: [O]h great! I'm very happy to get that feedback from Lance! Especially in front of Elicia. Can you believe they are still doing jury selection? I thought there were 70 people for one case. Turns out, there are 150 people. Very high profile case. One more day of selection and I should be done. I hop[e].
>
> Ms. Clement: Just remember my coaching! 😜
>
> Ms. Clement: Elicia even said to Lance "Can I have I told you so rights!
>
> Plaintiff: Lol. Nice

(*Id.* at ¶ 39.)

In the days that followed, Plaintiff and Ms. Clement exchanged additional related text messages:

> Ms. Clement: Happy Monday! Please don't get picked!!!! Putting the review together. I really need some wins/challenges from the mail shipping area
>
> Ms. Clement: Hello Juror! Sorry we didn't connect last week. I will do the team call today and operations call tomorrow. Hopefully we can talk this week.
>
> Plaintiff: Ok sounds good. I will give you a call after court today. Fun fun...

3

> Ms. Clement: It's all your fault! You ginxed me! I got a jury summons today!!!
>
> Plaintiff: Omg! That is funny.. don't get picked! Lol
>
> Ms. Clement: Oh I won't!

(*Id.* at ¶ 40.)

Plaintiff emailed his team to let them know he would be serving on the jury for several weeks, and he advised them that he would check emails in the mornings and evenings and that they should reach out to Mr. Schwanz, Ms. Clement, or local managers with any issues needing attention. (*Id.* at ¶ 43.) During his jury service, Plaintiff had multiple communications by phone and text message with Mr. Schwanz and Ms. Clement. (*Id.* at ¶¶ 51, 52.) Defendant paid Plaintiff is full base salary for the duration of his jury service, and he returned to work on April 6, 2018. (*Id.* at ¶¶ 30, 55.)

Later that month, Intuit requested that a well-liked employee be removed from its account, and Plaintiff was tasked with informing the employee and handling the matter "with sensitivity." (*Id.* at ¶¶ 56, 59.) Although Ms. Clement had suggested handling the matter with a three-way phone call, Plaintiff assigned the task to a local manager who could deliver the news in a face-to-face meeting with the employee. (*Id.* at ¶ 60.) Intuit later expressed disappointment at how the removal was handled. (*Id.* at ¶ 62.)

In May 2018, Plaintiff received two write-ups from Mr. Schwanz on verbal warning documentation forms, the first referring to his negative feedback from Intuit discussed in February 2018,[1] and the second referring to his handling of the removal of the employee from the Intuit account. (*Id.* at ¶ 64.) At the end of May, Plaintiff took a medical leave of absence.

---

[1] Defendant concedes the date on this form is incorrect. (ECF No. 70 at 7 n.5.)

(*Id.* at ¶ 69.) He received twelve weeks of leave pursuant to the Family Medical Leave Act ("FMLA"), which ended on August 23, 2018. (*Id.* at ¶ 71.) According to Defendant, he was then placed on short-term disability leave through October 19, when his approved leave ended. (*Id.* at ¶ 72; ECF No. 70 at 7, 29.)

Meanwhile, in June, Intuit requested that Plaintiff be removed from managing its account. (ECF No. 94 at ¶ 75.) The following month, a new manager was selected to replace Plaintiff, and on July 9, Mr. Schwanz informed Plaintiff, who was still on medical leave, that he had been removed from the Intuit account. (*Id.* at ¶¶ 78, 79.) After this conversation, Plaintiff did not contact Mr. Schwanz or any other member of Defendant's management to discuss his employment. (*Id.* at ¶ 93.)

On July 27, 2018, Plaintiff's counsel sent Defendant a demand letter, raising concerns about how Plaintiff was treated with respect to his jury service. (*Id.* at ¶ 84.) Although this prompted an investigation by Defendant, Plaintiff did not meaningfully participate in it. (*Id.* at ¶¶ 87, 88.) The investigation concluded that no policy violations had occurred. (*Id.* at ¶ 90.)

On August 23, 2018, Plaintiff initiated this lawsuit in the Boulder County District Court, alleging that he had been actually and constructively discharged. (*Id.* at ¶¶ 91, 92.) Meanwhile, he continued to represent that he was on a leave of absence. The day after the lawsuit was filed, Plaintiff sent a work email to a colleague stating that he was "currently on LOA from Ricoh for some health stuff." (*Id.* at ¶ 95.) And the following month, in a request to have his health insurance reinstated, he stated that he was "still officially on LOA." (*Id.* at ¶ 96.) In November, Plaintiff received his performance bonus for the period ending in September 2018. (*Id.* at ¶ 101.) He would not have been eligible for that payment unless he was still employed at the end of September. (*Id.* at ¶ 102.) Nor would he have been eligible for Defendant's health insurance,

5

which he maintained through December 2018, were he not an employee of Defendant. (*Id.* at ¶¶ 97, 98.)

On December 5, 2018, Defendant sent Plaintiff a letter stating that according to its records, he had been on a leave of absence since June, and that if Defendant did not hear from him by December 12, his employment would be administratively terminated. (*Id.* at ¶ 103.) When Defendant did not receive a response, it sent a follow-up letter on December 13, stating that his termination was effective as of that date. (*Id.* at ¶ 104.)

Plaintiff asserts eight claims for relief related to his separation from Defendant, including Colorado statutory claims, an FMLA claim, and common law claims for wrongful termination, breach of contract, and promissory estoppel. In its motion for summary judgment, Defendant argues that Plaintiff is "attempt[ing] to leverage his jury service as a convenient excuse for his performance issues and refusal to return to work," and that it never terminated him; rather, it "accepted his voluntary resignation after he failed to return from medical leave." (ECF No. 70 at 2-3.)

### III. ANALYSIS

#### A. Count I: Violation of Colo. Rev. Stat. § 13-71-134

Plaintiff asserts claims for illegal harassment and wrongful termination under the Colorado Uniform Jury Selection and Service Act ("JSSA"), Colo. Rev. Stat. § 13-71-134, which generally prohibits an employer from harassing, threating, or coercing an employee because of his jury service, or from substantially interfering with the effective performance of jury service.

##### 1. Harassment

To support his claim for illegal harassment under the statute, Plaintiff cites *Robinson v. City and County of Denver*, 30 P.3d 677, 682 (Colo. App. 2000), and argues that Defendant's

6

conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment." (*See* ECF No. 77 at 14-16.)  Defendant contends that it is entitled to summary judgment on Plaintiff's JSSA claims because he has not established that it subjected him to harassment, threats, or coercion due to his jury service.  The Court agrees.

Although no precise test has been established for determining whether a work environment is sufficiently hostile or abusive to support a cause of action, courts evaluate the totality of the circumstances by considering the frequency of the conduct, whether it is physically threatening or intimidating as opposed to merely offensive, and whether the conduct interferes with the employee's work performance.  *See id.*  The Court finds that none of these factors weighs in Plaintiff's favor.

Plaintiff cites on the following alleged conduct by Defendant to support his harassment claim: (1) Ms. Clement "coaching" him to dishonestly claim that he did not support law enforcement in order to avoid jury service followed by text messages expressing hostility toward jury service, (2) Ms. Clement and Mr. Schwanz pressuring him to "own" the Intuit account while he was out and ignoring his requests for help, (3) Mr. Schwanz issuing two "sham" write-ups, (4) Defendant piling "extra" work on him, and (5) Defendant refusing to honor its agreement to return Plaintiff to his former position if the Intuit account did not work out.  (ECF No. 77 at 14-16.)

These allegations are insufficient to raise a genuine issue as to whether Defendant created "'an environment that a reasonable person would find hostile or abusive.'"  *Robinson*, 30 P.3d at 682 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  First, a reasonable person would not interpret a few comments about the undesirability of jury service—including a text message with an emoji of a winking face with its tongue out—as a directive to commit perjury to

7

avoid jury service. The mere allegation that Plaintiff felt uncomfortable by Ms. Clement's suggestion or found it offensive is not enough establish a hostile work environment. Moreover, Plaintiff made very similar comments to Ms. Clement when he heard about her jury summons yet asserts that his comments were obviously sarcastic and joking, not harassment. (ECF No. 94 at ¶ 42.)

Second, Plaintiff has not shown that the vague and limited allegations about his being held responsible for the Intuit account even while on jury duty and not receiving requested assistance with his job amount to the type of threats, harassment, or coercion that would support a JSSA claim. Indeed, some of the support he requested, such as a financial analysis, was sought before he received his jury summons. Notably, only these first two categories of alleged conduct directly pertain to Plaintiff's jury service.

Third, the fact that Plaintiff disagrees with the write-ups does not establish that they are shams. Plaintiff points to no evidence that he challenged or appealed the write-ups, and this is not the proper forum to do so. Further, both write-ups stemmed from complaints by Defendant's client, Intuit, not directly from Defendant, and the first refers to performance issues that predate Plaintiff's jury service. Moreover, Plaintiff has not shown that either write-up tangibly affected the conditions of his employment, must less contributed to an adverse or hostile work environment.

Fourth, Plaintiff has not identified any evidence in the record to support his contention that he was given "extra" work after his jury service. The evidence cited in Plaintiff's response to Defendant's statement of undisputed material facts indicates merely that Mr. Schwanz followed up with Plaintiff about "outstanding deliverables" that Plaintiff had not provided to

him. (ECF No. 94 at ¶ 84.) This is insufficient to establish that Plaintiff was given *additional* tasks following his jury service.[2]

Fifth, Plaintiff's contention that Defendant would not honor a purported oral agreement that he could return to his former position is speculative, given that he never returned to work after being removed from the Intuit account. In *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1222 (10th Cir. 2002), the court granted summary judgment for the employer where the employee failed to allege facts raising an inference that he had no choice but to resign and resigned before he had complete details as to the position into which his employer was in the process of transferring him. The rationale of *Garrett* adds further support for the conclusion that Plaintiff's uncertainty about what position he might hold in the future does not suffice to show harassment by Defendant that is objectively hostile or abusive.

2. <u>Wrongful Termination</u>

To support his wrongful termination claim, Plaintiff argues that he was constructively discharged for his jury service. "To prove constructive discharge under Colorado law, 'a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign.'" *Cejka v. Vectrus Sys. Corp.*, 350 F. Supp. 3d 967, 970-71 (D. Colo. 2018) (quoting *Wilson v. Bd. of Cty. Comm'rs*, 703 P.2d 1257, 1259 (Colo. 1985)). Defendant argues that Plaintiff cannot show he was constructively discharged *because of* his jury service or even that he was constructively discharged at all. Again, the Court agrees.

---

[2] The other portions of the record cited by Plaintiff to show Defendant was allegedly piling extra work onto him reference other matters and are clearly not on point. (*See* ECF No. 94 at ¶¶ 76, 99.)

Although the question of whether a constructive discharge occurred is generally a question of fact to be resolved by a jury, the issue is appropriately resolved on summary judgment when the record presents no basis from which a reasonable jury could conclude the plaintiff was constructively discharged.  *See Garrett*, 305 F.3d at 1222.  Here, Plaintiff never formally resigned, and the complaint does not allege a specific date on which he was actually or constructively discharged.[3]  To the extent Plaintiff argues that he was constructively discharged on July 9, 2018, when Mr. Schwanz informed him he had been removed from the Intuit account, or at any other time before he was administratively terminated on December 13, 2018, the Court finds he has failed to adduce evidence of sufficient words or actions by Defendant that "would logically lead a prudent person to believe his tenure had been terminated." *Cejka*, 350 F. Supp. 3d at 974 (quotation omitted).  Indeed, as discussed below, ample evidence shows that Plaintiff did not consider himself separated from his employment well after July 9 and that, until December 13, Defendant contemplated that Plaintiff would return to work at some point.

To support his constructive discharge claim, Plaintiff relies on many of the same allegations that underlie his harassment claim, seemingly arguing that the cumulative effect of Defendant's conduct was to make his working conditions intolerable.  Plaintiff's additional allegations that an employee informed him ahead of time that he would be removed from the Intuit account and that Defendant was "setting him up to fail" (ECF No. 77 at 20) do not materially change the analysis.  And Plaintiff's contention that Defendant "improperly discontinued his short-term disability benefits" in September 2018 appears to be at odds with his contention that he was constructively discharged in July.  (*Id.*; ECF No. 94 at ¶ 99.)

---

[3] Based on his response, Plaintiff appears to have abandoned his contention that he was actually discharged. (*See* ECF No. 77.)

10

In addition, substantial evidence in the record undermines Plaintiff's position that he had a reasonable basis for believing he was constructively discharged on July 9, 2018. At his deposition, Plaintiff testified that when he was informed about his removal from the Intuit account, he did not speak to anyone else about potential job opportunities with Defendant "[b]ecause [he] still worked for [Mr. Schwanz]." (ECF No. 72-2 at 33, p. 76, l. 15.) Although his own characterization of his employment status is not dispositive, *see Cejka*, 350 F. Supp. 3d at 978, Plaintiff continued to represent that he was on a leave of absence, even after he filed this lawsuit on August 23. (*See* ECF No. 94 at ¶¶ 95, 96.) Further, Defendant's actions were consistent with its contention that Plaintiff was not terminated until December 13, 2018. It paid Plaintiff his performance bonus for the period ending in September 2018, which he would not have been eligible for if he were no longer an employee at that time, and Defendant's December 5 pre-termination letter also stated that it considered Plaintiff to be on a leave of absence. (*Id.* at ¶ 103.)

On this record, the evidence does not give rise to a reasonable inference that a constructive discharge occurred. Therefore, Defendant is entitled to summary judgment on Plaintiff's JSSA claims.

### B. Count II: Wrongful Termination in Violation of Public Policy

Plaintiff concedes that this claim is now moot. (ECF No. 77 at 1 n.1.)

### C. Counts III through VII

Defendant argues that these five claims are precluded by Plaintiff's failure to establish his JSSA claims. The Court agrees.

Count III is for breach of contract and is based on the legal theory that Defendant breached its policies by subjecting Plaintiff to coercion, harassment, threats, or penalties because

11

of his jury service. Accordingly, the Court's determinations above establish there are no genuine issues as to this claim.

Count IV is for willful and wanton breach of contract and, based on the complaint, is nearly identical to Count III. To the extent that Plaintiff attempts to amend the allegations in the complaint by asserting that Defendant breached its oral promise to allow Plaintiff to return to his old position, he has not sought leave to do so. Further, because Plaintiff never returned to work, such a claim would necessarily rest, at least in part, on mere speculation.

Count V is for promissory estoppel. This claim, as pled, also depends on Plaintiff's constructive discharge. To the extent that he now attempts to assert a promissory estoppel claim based on the oral promise asserted above as an alternative basis for his preceding contract claim, this claim fails for the same reasons.

Count VI is for FMLA retaliation. The same alleged coercion, harassment, retaliation, and constructive discharge underlying the above claims underlies this one as well.

Count VII is for unlawful prohibition of legal activities as a condition of employment. Again, in the absence of a genuine issue as to whether Plaintiff was constructively discharged, this claim must also fail.

### C. Count VIII: Damages and Penalties under Colo. Rev. Stat. § 8-4-109

Finally, Plaintiff also argues that Defendant was statutorily obligated to pay his vested benefits and compensation within fourteen days of his counsel's October 4, 2018 written demand. (ECF No. 17-1 at ¶¶ 82-88.) Defendant argues that after it administratively terminated Plaintiff, it timely paid for his accrued vacation pay, and that Plaintiff is not entitled to any other wages or compensation. (ECF No. 70 at 29-30.) In response, Plaintiff contends that the parties dispute when and how he was separated from his employment with Plaintiff. Nonetheless, he

argues that Defendant has not paid any of the penalties or attorney's fees it owes to Plaintiff under Colo. Rev. Stat. § 8-4-109. To the extent this claim does not fail as well for failure to establish a constructive discharge, in the absence of any showing by Plaintiff as to any penalties or fees that are owed, Defendant is entitled to summary judgment on this claim as well.

## IV.   CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 70). Plaintiff's motion for sanctions (ECF No. 81) is DENIED AS MOOT. The Clerk is directed ENTER JUDGMENT in Defendant's favor and CLOSE this case.

DATED this 17th day of September, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge